**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| MONTEREY RESEARCH, LLC, | § | |
| *Plaintiff* | § | |
| | § | |
| -vs- | § | **W-21-CV-00541-ADA** |
| | § | |
| BROADCOM CORPORATION, | § | |
| *Defendant* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Broadcom Corp.'s ("Defendant" or "Broadcom") Motion to Transfer Venue under 28 U.S.C. § 1404(a) to the Northern District of California. ECF No. 43. Plaintiff Monterey Research, LLC ("Plaintiff" or "Monterey") filed its Response (ECF No. 59), and Broadcom filed its Reply (ECF No. 66). After careful consideration of the parties' briefs and the applicable law, the Court **DENIES** Broadcom's Motion to Transfer to the Northern District of California.

## I.     FACTUAL BACKGROUND

Plaintiff Monterey filed this lawsuit accusing Defendant Broadcom of infringing U.S. Patent Nos. 6,459,625 ("the '625 Patent") and 6,651,134 ("the '134 Patent"). ECF No. 1 ¶¶ 33, 46. The '625 Patent teaches "how to selectively place and electrically connect a plurality of electrical components to form sub-circuits and selectively electrically connect the sub-circuits, including using three or more metal layers, resulting in, among other things, minimizing the layout area of the sub-circuits in the periphery area." *Id.* ¶ 32. The '134 Patent "provides a faster and more efficient way for burst read and write access over conventional DRAM devices." *Id.* ¶ 44. Additionally, the '134 Patent teaches "a fixed burst memory that can have non-interruptible

1

bursts, hide required DRAM refreshes inside a known fixed burst length, free up the address and control busses for multiple cycles, and operate at higher frequencies without needing interrupts to perform refreshes of data." *Id.* ¶ 45.

Monterey is an intellectual property and technology licensing company, organized as a limited liability company with offices in New Jersey and California. *Id.* ¶¶ 1, 4. Broadcom is a California corporation with a regular and established place of business in the Western District of Texas. *Id.* ¶ 6; ECF No. 43 at 2. Broadcom's principal place of business is in San Jose, California. ECF No. 43 at 2.

Monterey filed another patent infringement suit against Broadcom on the same date as the instant suit. *See Monterey Research, LLC v. Broadcom Corp.*, No. 6:21-cv-542-ADA (W.D. Tex. May 28, 2021) ("*Broadcom 542*"). The *Broadcom 542* case is also subject to a motion to transfer venue. Relative to *Broadcom 542*, Monterey filed suit against AMD and Qualcomm, asserting a patent common to *Broadcom 542*. *See Broadcom 542*, ECF No. 1; *Monterey Research, LLC v. Advanced Micro Devices, Inc.*, No. 6:21-cv-839-ADA, ECF No. 1 (W.D. Tex. Aug. 12, 2021) ("*AMD 839*"); *Monterey Research, LLC v. Qualcomm Inc., et al.*, No. 6:21-cv-936-ADA, ECF No. 1 (W.D. Tex. Sept. 10, 2021) ("*Qualcomm*"). Additionally, Monterey's *Broadcom 542* case involves the same three patents asserted against Qualcomm. *See Broadcom 542*, ECF No. 1; *Qualcomm*, ECF No. 1.

## II.     LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought or to

any district or division to which all parties have consented." *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under Section 1404(a) is whether a civil action "might have been brought" in the transfer destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*. Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The burden to prove that a case should be transferred for convenience falls squarely on the moving party. *Volkswagen II*, 545 F.3d at 314. The burden that a movant must carry is not

that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 314–15. Although the plaintiff's choice of forum is not a separate factor entitled to special weight, respect for the plaintiff's choice of forum is encompassed in the movant's elevated burden to "clearly demonstrate" that the proposed transferee forum is "clearly more convenient" than the forum in which the case was filed. *Id.* While "clearly more convenient" is not necessarily equivalent to "clear and convincing," the moving party "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

## III.    DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the Northern District of California ("NDCA"). Broadcom asserts that this case could have been brought in the NDCA because Broadcom has its principal place of business in San Jose. ECF No. 43 at 6. Monterey does not dispute this point. *See generally*, ECF No. 59. This Court finds that venue would have been proper in the NDCA had Monterey originally filed this case there. Thus, the Court proceeds with its analysis of the private and public interest factors to determine if the NDCA is clearly more convenient than the Western District of Texas ("WDTX").

### A.  The Private Interest Factors

#### i.    *The Relative Ease of Access to Sources of Proof*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative*

ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc*., 979 F.3d 1332, 1340 (Fed. Cir. 2020) (citing *In re Genentech*, 566 F.3d 1388, 1345 (Fed. Cir. 2009)).

Broadcom states that this factor favors transfer because the relevant files and other physical evidence regarding the accused products "are only accessible at Broadcom's San Jose facilities in the NDCA or otherwise stored in data centers on the west coast." ECF No. 43 at 8. Furthermore, given Monterey's prior representations, any access to Broadcom's source code and Graphic Data System files are "highly confidential" and "will be limited to in-person inspection at or near Broadcom's San Jose facilities in the NDCA." *Id.*; ECF No. 43-8 ¶ 6. Last, non-party subsidiary Avago Technologies U.S. Inc. ("Avago") stores its documents regarding its sales on servers at its San Jose facility. ECF No. 44 at 4; ECF No. 43-8 ¶ 7.

Monterey argues that the very declaration Broadcom cites to actually states that Broadcom's "proprietary source code and GDS files [are] in multiple data centers in Nevada, as well as [*sic*] single data center in Virginia." ECF No. 43-8 ¶ 6; ECF No. 59 at 7. Indeed, "Broadcom does not refer to where Broadcom stores its source code and GDS files—Nevada and Virginia—but rather where Broadcom unilaterally intends to provide source code and GDS files to Monterey during discovery in this case." ECF No. 59 at 7 (emphasis omitted). And, if this Court were to lend credence to such a statement, parties could "manufacture venue by limiting the place of discovery to a preferred venue." *Id.*

Monterey has the better of this argument. First, parties cannot manufacture venue with discovery ultimatums. The Court is sensitive to the confidential nature of source code, but that

does not always require access or review at one particular location. In fact, it is all too often a debated issue when establishing governing protective orders. But, given the location of Broadcom's data centers, as addressed in more detail below, the Court is unwilling to find that Broadcom's ultimatum requires this factor favor transfer.

Second, general allegations unsupported by specific evidence do not tip the scales in a transfer analysis. Broadcom states that most of its accused products were researched, designed, and developed in the NDCA. ECF No. 66 at 4. To support that proposition, Broadcom attached an Appendix that lists the Asserted Patents, the Accused Products, the Responsible Business Unit, the employees in California or Texas, the Location(s) of Primary R&D Work, the Location(s) of Most Knowledge Witness(es) in view of PICs, and the Location of BU Lead. ECF No. 66-1. However, none of these columns adequately indicate the *sources of proof*, especially in light of Broadcom's other contentions. *See* ECF No. 43-8 ¶ 3. For example, Broadcom cites to the declaration of Mr. Ryan Phillips, wherein he states the "vast majority of those witnesses" would be located in California. But later declarations indicate that not every California reference is relevant to the NDCA. *See id.* ¶ 4 ("In contrast, the same division has more than 220 R&D employees in California, including more than 90 in San Jose."). Later, in the same paragraph, Mr. Phillips states that "most of products Plaintiff accuses of infringement in this case were designed primarily in California, and most of the technological research related to the products was done in California." But nothing in the declaration cites to any specific documents or sources of proof. And, in Mr. Phillips's deposition, it became clear little was done to support such an allegation. *See* ECF No. 59-3, 262:25-263:4 ("Q. As part of your investigation, did you do anything to investigate where documents relating to the accused products may be located? A. No, not really.").

Third, Broadcom dedicates a portion of its briefing under this factor to address the "controlling Fifth Circuit law" that relevant access is the "access to the 'actual physical location of servers containing electronic documents,' not simply electronic access to such servers from remote locations." ECF No. 43 at 7 (citing *Bluebonnet Internet Media Servs., LLC v. Pandora Media, LLC*, No. 6-20-CV-00731-ADA, 2021 WL 3134262, at *3 (W.D. Tex. July 22, 2021). And in Broadcom's reply, it states that its "design files are stored in data centers in nearby Nevada (as well as Virginia)." ECF No. 66 at 4; *see also* ECF No. 43-8 ¶ 6 ("Broadcom Corp. stores its proprietary source code and GDS files in multiple data centers in Nevada, as well as [*sic*] single data center in Virginia."). Indeed, "[n]o such files are stored in or near Texas." *Id.* But in rebutting any relevance to Texas, Broadcom defeats its own argument regarding the sources of proof in the NDCA. "The relevant 'access' is the relative ease of access to the *actual physical location* of servers containing the electronic documents." *Id.* (emphasis in original). A general allegation that products were researched, designed, and developed in the NDCA is not sufficient. Particularly when, after discovery, it becomes clear the data centers hosting such design files are actually located in Nevada and Virginia. *See also* ECF No. 59-3, 257:18-25 ("Q. so the data centers that store Broadcom's source code are located in Virginia and Nevada; is that right? A. That's correct. Q. And the data centers that store Broadcom's semiconductor design files are located in Virginia and Nevada; is that right? A. That's correct."). In the end, "[w]hat matters is the relative access to sources of evidence in the two competing forums." *Juniper*, 14 F.4th at 1321; *see also id.* ("[T]hat some evidence is stored in places other than either the transferor or the transferee forum does not weigh against transfer.").

The most relevant documents are stored on servers in Nevada and Virginia. However, Avago maintains its sales documents on its servers in the NDCA. In weighing the sources of

proof relevant to this case, the Court finds that this factor weighs slightly in favor of transfer to the NDCA.

### ii.   *The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, No. 6:18-cv-00372, 2019 WL 4743678 at *14 (citing *Volkswagen II*, 545 F.3d at 316); *see also In re Juniper*, 14 F.4th 1313, 1316 (Fed. Cir. 2021) ("the private factors are . . . (2) the availability of compulsory process to secure the attendance of *non-party witnesses* whose attendance may need to be compelled by court order…") (emphasis added).

Broadcom asserts that "numerous non-party witnesses are located in the NDCA (or elsewhere in California)" and that "no known non-party witnesses are located in the WDTX." ECF No. 43 at 8–9. Such non-party witnesses include the entity responsible for sales of the accused products, each of the named inventors on the asserted patents, prior assignees of the asserted patents, and numerous licensees of the asserted patents. *Id.* at 8–9. First, Broadcom points to Avago, the entity responsible for the sales of the accused products in the United States. *Id.* at 3. Avago is incorporated in Delaware with its principal place of business in San Jose. *Id.* at 3–4. Of its 776 U.S. employees, 503 are based in the NDCA. *Id.* at 4. Second, Broadcom further points to the last residence of record for each of the named inventors. For the '625 Patent, all three are listed in California, and two of the three are in the NDCA. *Id.* The '134 Patent's sole

inventor is also located in the NDCA. *Id.* Third, Broadcom notes that all prior owners of the asserted patents are based in the NDCA, including Advanced Micro Devices, Inc. (the '625 Patent), Spansion Inc. (the '625 Patent), and Cypress Semiconductor Corp. (the '625 and '134 Patents). *Id.* Fourth, both of the asserted patents have been subject to prior litigation in the NDCA. *Id.* at 5. Litigation of the '625 Patent ended with license agreements for each alleged infringer, all of which maintain a principal place of business in the NDCA. *Id.* Similarly, the owner of the '134 Patent entered into a license agreement with the defendant who maintains a principal place of business in the NDCA. *Id.*

Monterey argues that at least three Broadcom distributors of the accused products exist in this District and elsewhere in Texas, including Avnet, Allied Electronics, and Mouser Electronics. ECF No. 59 at 8. Monterey argues that each of the distributors are relevant because they may have "information regarding indirect infringement and damages, including the products' use, sales, marketing, and value." *Id.* Next, Monterey asserts Broadcom customers and partners are within the WDTX. For example, AT&T, headquartered in Dallas, Texas, uses Broadcom's ethernet switches accused for the '625 Patent. *Id.*; ECF Nos. 60-6, 60-7 at 1–2, 60-8 at 2. Other customers of a certain ethernet switch include Huawei and ZTE, both located in Texas. ECF Nos. 60-11 at 1, 60-7 at 2 (Huawei); ECF Nos. 60-12 at 1; 60-7 at 2 (ZTE).

Monterey also disputes whether Avago should be considered as a third-party under the compulsory process factor because it is a subsidiary of Broadcom and nothing indicates a Court order will be necessary to procure its attendance. *Id.* ECF No. 59-3, 262:21-24 ("Q. So am I correct that Avago Technologies U.S., Inc. has a corporate relationship with Broadcom Corporation? A. Yes."). In addition, Monterey questions the accuracy of the inventors' addresses, stating that one of the named inventors now lives in Vancouver, Canada. ECF No. 59

at 9. Regarding the prior assignees, Monterey states that both Cypress Semiconductor and Spansion have been acquired by Infineon Technologies AG, which is headquartered in Munich, Germany with a legacy manufacturing facility in this District. *Id.* Monterey argues that this may be relevant due to Broadcom's invalidity contentions. *Id.* Last, Monterey states that two of the four licensees, named by Broadcom, are headquartered overseas. *Id.* Furthermore, all four of the companies "have offices and/or employees in Texas," and "Broadcom has not articulated any reason for why Broadcom would call these companies to testify at trial. *Id.* at 10.

   a. <u>Distributors, Customers, and Partners</u>

Numerous third parties maintain operations within the subpoena power of either the WDTX and the NDCA, and some maintain operations in both. However, some appear to be far more relevant than others. *See* ECF No. 66 at 4 ("None of the ten accused products in this case (*see* Appendix A) has been sold in Texas to any of Avnet, Allied Electronics, Mouser Electronics, AT&T, Dell, Huawei, or ZTE." (citing to ECF Nos. 67-3, 67-4)).

Avago, on the other hand, appears to have relevant information regarding the sales of the accused products in the United States. Monterey argues it should not be treated as a non-party witness under the compulsory witness factor because it is a subsidiary. It is unclear whether subsidiary companies should be addressed under the compulsory process factor or the willing witness factor. *Compare Network-1 Sec. Sols., Inc. v. D-Link Corp.*, 433 F. Supp. 2d 795, 799 (E.D. Tex. 2006) (analyzing a wholly-owned subsidiary under the compulsory process factor), *with Symbol Techs., Inc. v. Metrologic Instruments, Inc.*, 450 F. Supp. 2d 676, 679 (E.D. Tex. 2006) ("Although Metrologic has not specified why the testimony of an Omniplanar employee may be necessary at trial, as a subsidiary of Metrologic, the Court does not anticipate that the compulsory process will be necessary to compel the attendance of any necessary

10

Omniplanar witnesses."). While Avago witnesses may not require a court order to procure their attendance, the clearer demarcation appears to be between a party and *non*-party witness.[1] *See Volkswagen II*, 545 F.3d at 316 (analyzing "the non-party witnesses located in the city where the collision occurred" under the compulsory process factor); *see also In re Dish Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (holding that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor") (citing *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018)). Accordingly, the Court addresses Avago under the compulsory witness factor. Given Avago is based in the NDCA, the Court finds that more of the non-party distributors, customers, and partners reside in the NDCA compared to the WDTX.

   b.  Inventors

       The inventors' listed addresses on the asserted patents are likely unreliable because the '625 Patent and '134 Patent were issued in 2002 and 2003, respectively. However, both Broadcom and Monterey provide screenshots of the inventors' LinkedIn profiles to establish current residence. According to the cited evidence, at least three of the inventors reside in the NDCA: Colin Bill in Sunnyvale, California (ECF No. 66-9); Ravi Gutala in San Jose, California (ECF No. 66-10); and Cathal Phelan in Los Altos, California (ECF No. 66-11). Monterey argues that Jonathan Su is not in California, but instead has relocated to Vancouver, Canada. ECF No. 59 at 9 ("As of fall, 2021, Annie and Jonathan [Su] are based in Vancouver…"). The provided quote does not appear in the evidence, perhaps due to collapsed drop-downs. *See* ECF No. 60-13

---

[1] The Court questions the practicality of incorporating Avago under the compulsory factor, particularly when the paralegal in charge of gathering information for Broadcom's discovery responses is an Avago employee. *See* ECF No. 59-3, 67:5-7 ("Q. Who is Kathy Manke's employer? A. I think it's one of the Avago entities."). However, given the jurisprudence on corporate separateness, the Fifth Circuit's use of the term "non-party" when analyzing the compulsory witness factor, and recent Federal Circuit opinions to presume unwillingness, this Court finds that non-parties should be considered under the compulsory witness factor.

(showing Jonathan Su's location as San Gabriel, California). Assuming Monterey's contention is correct, even the listed locations of each of the inventors on their LinkedIn profiles could be outdated. But that is unlikely to be the case. The Court finds that the inventors likely have relevant testimony and that, at the very least, the majority of them reside in the NDCA.

c.   Prior Assignees and Licensees

The Court also finds Broadcom's named assignees that may maintain information relevant to the instant litigation reside in the NDCA. And while two of the prior assignees were acquired by a German company that maintains a manufacturing facility in the WDTX, Cypress Semiconductor Corp. still maintains its principal place of business in the NDCA. ECF No. 66 at 4. Additionally, the Court finds that the known licenses, namely Samsung Electronics, Macronix, Marvell, and GSI Technology, may have relevant information as to damages. It is unlikely that any of them will testify at trial, especially via live testimony. And of them, two are headquartered overseas while all four have neutralizing offices in Texas.

Accordingly, the Court finds that while many of the named non-parties are neutral, only a few reside in the NDCA and not the WDTX. For the above-mentioned reasons, the Court finds that the NDCA will have greater subpoena power for both depositions and trial. Therefore, this factor weighs in favor of transfer.

iii.   **The Cost of Attendance and Convenience for Willing Witnesses**

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d at 1342. When analyzing this factor, the Court should consider all potential material and relevant witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 U.S. Dist. LEXIS 152438, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017). "When the distance between an existing venue for trial of a matter and a proposed venue

under §1404(a) is more than 100 miles, the factor or inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I*, 371 F.3d at 203). But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" in some cases where witnesses would be required to travel a significant distance no matter where they testify. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). The Federal Circuit has indicated that time away from an individual's home is a more important metric than distance. *Id.*

Broadcom argues that because the principal place of business for both Monterey and Broadcom is the NDCA, most relevant willing witnesses will reside in the transferee forum. ECF No. 43 at 10. Conversely, Broadcom argues that its Austin employees have not been established as necessary to this case, particularly because they do not work on the accused functionalities of the accused products (though they have worked on the accused products). *Id.* at 2; *see also* ECF No. 66 at 1. But to support that transfer is proper, Broadcom cites to Mr. Phillips's declaration and its interrogatory responses that break down the most relevant witnesses by accused product. *See* ECF No. 43-8 ¶¶ 4, 5; *see also* ECF No. 59-5 at 9–20. Monterey heavily relies on the proposition that Broadcom's cited declaration from Mr. Phillips is flawed because he lacks the knowledge necessary to support his assertions. ECF No. 59 at 10–11. Hence, Monterey argues, Mr. Phillips overlooks several relevant witnesses in Austin and his declaration is unreliable. *Id.* at 11.

The Court agrees the manner and method of Broadcom's venue investigation was somewhat circumspect and superficial. As indicated by Monterey in its 30(b)(6) deposition, Mr. Phillips had his paralegal research all the topics, reviewed the information she gathered, and then spoke with outside counsel. But Mr. Phillips did not meaningfully speak with anyone other than his paralegal Ms. Manke or Broadcom's outside counsel regarding the employees identified in his declaration. ECF No. 59-3, 26:24-27:11; 29:3-11; 60:17-61:4; 248:22-249:23. Mr. Phillips also acknowledged he did not personally investigate where the accused products were primarily designed. ECF No. 59-3, 278:9-11. Furthermore, very little detail is given regarding Ms. Manke's investigative process. *Id.* 57:3-60:20; 159:8-161:22.

Much of the Court's concern is that the investigative process begins with the proposition that employees involved in the research and design of the accused products are "probably all in California." ECF No. 59-3, 159:24-25; *see also id.* 155:6-24; s*ee also id.* 76:24-77:6. Realistically, the opening inquiry should be "where are the relevant witnesses located?"; not "are there relevant witnesses located in California?" Indeed, it is telling that Mr. Phillips did little to no research himself, but then added mitigating phrases to reduce the importance of any potential Texas witnesses. *See* ECF No. 59-3, 154:25-155:10 ("Q. Okay. Who decided to put the word 'minimally' in your declaration? A. I think I did. I edited this numerous times. Q. Okay. So--. A. I can state categorically, speaking from my own knowledge, that with every single product in the case, any involvement in Texas was minimal. I can just say that. I know that to be true.").

Broadcom argues that Monterey's cited quotes are a form of "blatant quote-cropping." ECF No. 66 at 2. But the Court finds that the reverse is true. Instead, after a thorough reading of the deposition transcript, Monterey's characterizations seem far more accurate than Broadcom's.

For example, Broadcom rebuts the idea that Mr. Phillips does not know what is happening in Austin with the following quote:

> Q.    What's your understanding of the range of employees at Broadcom's Austin facility?
>
> A.    I think there's R&D employees, marketing employees. I think probably sales employees probably, I would guess.
>
> Q.    It's your understanding that research and development work takes place at Broadcom's Austin facility?
>
> A.    That's correct.
>
> Q.    It's your understanding that product design work takes place at Broadcom's Austin facility?
>
> A.    Well, I don't know about product design work. I'm not sure.
>
> Q.    You don't know one way or the other?
>
> A.    I think that the facility is much more about verification. There's probably some design work. It's likely.

ECF No. 59-3, 76:6-23 (as cited by Broadcom). But information about what generally happens at the Austin facility has no bearing on the Court's analysis. Here, the Court is concerned with witnesses relevant to the accused products, and it is at that juncture that Mr. Phillips gets called on his two-seven off-suit.

> Q.    What's your understanding of the types of products that have been worked on at Broadcom's Austin facility?
>
> A.    Well, I have very little. Almost all of our products I've worked on in almost every litigation have been done at other facilities, so I don't know exactly what happens in Austin.

*Id.*, 76:24-77:6.

Another example includes Mr. Phillips's adamant statement regarding his "personal knowledge," where he states:

> A.    I can state categorically, speaking from my own knowledge, that with every single product in the case, any involvement in Texas was minimal. I can just say that. I know that to be true.

*Id.*, 155:6-10 (as cited by Broadcom). However, a continued reading illustrates Monterey's point, and this Court's concern.

> Q.    Okay. You know that from all of your conversations with Texas employees; correct?
>
> A.    I know that from managing litigation involving Broadcom products for ten years, and knowing that in all of those instances, we've never had an important witness in Texas, not once. In fact, I think we've only ever had one witness in Texas, and that witness -- it was a business unit we sold. So I can say that the involvement of Texas employees is minimal, just period, across the board.
>
> Q.    You can see say that even before you conducted your investigation, you could say that?
>
> A.    Absolutely.

*Id.*, 155:11-24. Mr. Phillips outsourced the investigation, gathered facts, and then added in key disclaimers to discredit employees in Austin, Texas and emphasize employees in the NDCA or elsewhere. But he added the disclaimers and emphasis based on prior experience with other cases irrelevant to the claims or facts at hand. The Court does not find Mr. Phillips to be a very credible witness and takes each of his statements with a grain of salt.[2] *See Uniloc 2017 LLC v. Cisco Sys., Inc.*, No. 2:18-CV-00505-JRG, 2019 WL 4451329, at *2 (E.D. Tex. Sept. 16, 2019) ("[T]he Philips Declaration was not based solely on the personal knowledge of the affiant, but instead on 'confirmation with other responsible personnel.' With this language, the Court has no means to assess the reliability of the Philips Declaration. Some unspecified portion of it is clearly hearsay from unnamed third parties. As noted at the hearing, the Court has no way to know if 99 percent or one percent of the declaration is based on such hearsay from unknown sources. Nor does Cisco disagree with the Court's characterization of the Philips Declaration as such. It simply has nothing else to offer."); *see also CTP Innovations, LLC v. IntegraColor*, No. 2:13-CV-484-

---

[2] The Court also notes that Mr. Phillips is located in Colorado, not California or Texas.

JRG-RSP, 2014 WL 12612800, at *2 (E.D. Tex. Sept. 30, 2014) ("The biggest issue, the "cut and paste" nature of the declarations provided with Defendants [*sic*] motion causes the Court some concern . . . For one, the lack of credibility behind certain evidence supporting a motion could (easily) stand alone as a basis for finding that a movant has failed to meet its burden. But more importantly, the Court has an independent interest in enforcing its requirements of candor. It is unclear to the Court what exactly has happened in this case, but what is clear is that there are substantial, unaddressed factual issues that preclude transfer here.").

a.  <u>'625 Patent: The BCM56880 and BCM56980 chips</u>

Monterey charted four products specific to the '625 Patent, including the BCM56880, BCM56980, BCM58713, and the BCM5976. For the BCM56880 and BCM56980 chips, two R&D employees are in Texas, "neither of whom were involved in the research or design of the BCM56880 chip." ECF No. 43-8 ¶ 4. Those Texas employees include Ananth Natarajan and Abbas Dadabhoy. ECF No. 59-5 at 9. According to Broadcom, the "BCM 56880 chip was primarily researched, designed, and developed by the CSG Switch Products business unit of Broadcom Corp. in San Jose, California." *Id.* Broadcom's interrogatory responses propose that Deepak Tyagi is the most relevant witness with knowledge regarding the design of the BCM56880 and BCM56980 chips. *Id.* Mr. Phillips's declaration echoes the same, but also adds that Yehuda Avidan has relevant knowledge regarding the design of the chips. ECF No. 43-8 ¶ 4. In addition, Ram Velaga is the head of the CSG Switch Products business unit. *Id.*

Regarding witnesses relevant to the BCM56880 and BCM56980, the Court finds as follows. Yehuda Avidan is not a relevant witness. He was not included in the interrogatory responses and Mr. Phillips, despite including him in his declaration, testified during his deposition that Mr. Avidan's involvement was "not in the area that would be relevant to this

case." *See* ECF No. 59-3, 169:6-12 ("Q. And am I correct that in Broadcom's Interrogatory responses, Broadcom no longer identifies Yehuda Avidan as a witness with relevant knowledge regarding the design of the BCM56880 and BCM56980? A. I'm looking at the 56980, and that is correct. 56880, let me confirm. That's correct."); *see also* ECF No. 43-8 ¶ 4.

Ananth Natarajan is a relevant witness that resides in Texas. Monterey cites to Broadcom's interrogatory response, wherein it states that Ananth Natarajan, a Texas employee, "was involved in the pre-silicon validation and post-silicon validation of the BCM56980 chip." ECF No. 59-5 at 10. Broadcom's argument regarding convenience is absurd: "his involvement occurred outside of Texas; he only recently moved to Texas." In other words, Broadcom argues that because Ananth Natarajan only recently moved to Texas, analysis of his convenience should still be rooted in the NDCA.[3] Such a position contradicts the purpose of the willing-witness factor. Additionally, Mr. Phillips qualified Mr. Natarajan's involvement with the phrase "albeit minimally," but without any explanation for why. ECF No. 43-8 ¶ 4; ECF No. 59-3, 156:20-157:13 ("Q. Okay. Did Ananth Natarajan tell Kathy Manke that his work on the BCM56980 was minimal? A. I don't know. Q. Did you ever ask Mr. Natarajan whether his work on the 56980 was minimal? A. No. Q. Is the word "minimal" or "minimally," is that a quote from Ananth Natarajan? A. No. Q. So you're the one that decided to put the word "minimally" in the description of Mr. Natarajan's work on the BCM56980; is that right? A. I either decided or I agreed with it. Q. Can you identify any document describing Ananth Natarajan's work on the BCM56980 as minimal? A. No."). The WDTX is more convenient for Ananth Natarajan because he is a *Texas employee* with relevant knowledge.

---

[3] Broadcom does not indicate the move occurred post-filing of the complaint. Therefore, the Court presumes Mr. Natarajan lived in Texas at the time of the filing of the complaint.

Abbas Dadabhoy's involvement with the accused products is vague; Deepak Tyagi's specific involvement is unknown; and no reason is given for why Ram Velaga would be a relevant witness. Instead, Broadcom's interrogatory response and Mr. Phillips's declaration echo the same tone: the chips were *primarily* researched, designed, and developed by the CSG Switch Products business unit of Broadcom Corp. in San Jose, California and witnesses with relevant knowledge are located in San Jose, including, for example, Deepak Tyagi. ECF No. 59-5 at 10. While Broadcom argues that it conducted a thorough investigation, *see* ECF No. 66 at 1–2, it fails to explain why Mr. Tyagi is the most relevant witness.

Broadcom's purported development of its venue facts rings hollow when it assumes witnesses relevant to the accused products are located in California based primarily on a numbers game. Ananth Natarajan appears to have relevant information, whereas none of the other named witnesses bring testimonial value other than being part of a department where California employees work on the accused products, but Texas employees categorically do not. Abbas Dadabhoy and Deepak Tyagi balance each other out between the transferor and transferee forums for the same reasons. Moreover, this Court does not find Ram Velaga to be a relevant witness other than simply a department head on an org-chart. Therefore, the most relevant witness for consideration is Ananth Natarajan, a Texas witness located within the WDTX.

b. <u>'625 Patent: The BCM58713 chip</u>

Broadcom argues that no Texas employees were involved in the research or design of the BCM58713 chip, though one of nine R&D employee lives in Texas. ECF No. 43-8 ¶ 4. Instead, Broadcom states that the "BCM58713 chip was primarily researched, designed, and developed by the CCX Compute and Connectivity business unit of Broadcom Corp. in Andover, Massachusetts and Irvine, California as well as by employees of one or more foreign corporate

affiliates of Broadcom Corp. in India." ECF No. 59-5 at 11. Broadcom proposes that Tony Martuscello and Eric Spada are two relevant witnesses located in Massachusetts. Last, Broadcom points to a couple of marketing employees in San Jose, California, and the head product manager located in Texas, Todd Trammell.

Of the three marketing employees, Todd Trammell is likely the most relevant due to his product manager experience "with respect to marketing." *Id.* at 12. However, it is unlikely that Mr. Trammell would testify, and the Court gives any proposed testimony from him little weight. In Mr. Phillips's declaration, he states that an unnamed witness with relevant knowledge regarding the design of the chip is located in Massachusetts. ECF No. 43-8 ¶ 4. Monterey argues that Wei Hou, a Texas employee, is involved in the same "CCX business unit that researched, developed, and designed the '625 accused products." ECF No. 59 at 12. But it appears clear from the record, and without much dispute from Monterey, that Mr. Hou has little to nothing to offer.

The Court therefore turns its attention to Tony Martuscello and Eric Spada. Each are proposed as relevant witnesses without dispute. The real contention lies in whether the WDTX is more convenient for these Massachusetts employees, or if the WDTX and NDCA are essentially a wash. The NDCA is almost twice as far as the WDTX from Andover, Massachusetts. In *Volkswagen I*, the Fifth Circuit stated: "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases *in direct relationship* to the additional *distance to be traveled.*" 371 F.3d at 204–05 (emphasis added). In contrast, the Federal Circuit has stated that "the '100-mile' rule should not be rigidly applied" when some witnesses are required to travel regardless of whether the case is transferred. *In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009); *see also In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New

York); *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at \*4 (Fed. Cir. Sept. 27, 2021) ("We have been mindful of that rationale for that rule, and we have rejected a rigid[ ] application of the rule when witnesses . . . will be required to travel a significant distance no matter where they testify and when all witnesses would be inconvenienced by having to leave home to attend trial. In light of the purpose underlying the rule, the inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time.") (internal citation and quotation marks omitted)).[4] Under this Court's understanding of Fifth Circuit precedent, witnesses relevant to the BCM58713 chip would be nearly twice as inconvenienced were this case transferred to the NDCA. But, as it stands under Federal Circuit guidance, any witness beyond 100-miles of the WDTX (or virtually anyone that must stay in a hotel or take a flight), suffers the same inconvenience regardless. Such a "non-rigid" approach writes the "beyond 100-miles" rule out of existence entirely. Therefore, in an effort to strike a balance between Fifth Circuit precedent and Federal Circuit guidance, the Court finds that the Massachusetts witnesses weigh only slightly against transfer, despite having to travel nearly twice the distance.[5]

c.   '625 Patent: The BCM5976 chip

Mr. Phillips states in his declaration that Broadcom "does not have any R&D employees in Texas." ECF No. 43-8 ¶ 4. "In contrast, that same division has more than 220 R&D employees

---

[4] While applying the rationale in this factor, the Federal Circuit has ignored the practicalities of electronic discovery in favor of rigidly applying the sources of proof factor. *See In re: NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at \*4 (Fed. Cir. Oct. 13, 2021) ("While electronic storage makes documents more widely accessible than was true in the past, the fact that documents can often be accessed remotely does not render the sources-of-proof factor irrelevant." (citing *Volkswagen II*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous."; referring to evidence and sources of proof in a design defect case that allegedly led to injuries suffered in a car wreck))); *see also In re Juniper Networks, Inc.*, No. 2021-156, 2021 WL 4519889, at \*3 (Fed. Cir. Oct. 4, 2021) ("While electronic storage makes documents more widely accessible, this factor remains relevant.").

[5] Under this Court's understanding of Fifth Circuit precedent, such witnesses would weigh against transfer (not slightly).

in California, including more than 90 in San Jose." *Id.* Mr. Phillips then proposes that Santiago Ortiz, located in Irvine, California (outside the NDCA) has relevant knowledge regarding the design of this chip. *Id.* "Additionally, the head of the MSAP division, Myles Wakayama, is located in Irvine, California." *Id.* Broadcom's interrogatory responses provide additional proposed witnesses, including Robert Pone and Yogesh Patel. ECF No. 59-5 at 12.

For the same reasons as above, the Court does not find that Myles Wakayama has any relevant information regarding the accused product other than the fact that he is the head of the division on the org-chart. But absent additional information, the Court cannot justify that he is a relevant witness. Mr. Phillips declaration and Broadcom's interrogatory responses do not even state that he is a relevant witness. *See id.*

Monterey disputes the relevance of Santiago Ortiz, arguing that he is the target of a conclusory sentence unsupported by documentation or testimony by Mr. Phillips. ECF No. 59 at 12. In turn, Monterey offers up Matt Crawley, an Austin-based Broadcom employee working in the same division as Broadcom's proposed witnesses. Both parties suffer the same argumentative flaw—neither provides what relevant testimony one has over another. Nonetheless, in view of the evidence provided, the Court finds it more likely that any relevant witness regarding the BCM5976 chip will come from California, though not necessarily the NDCA.

Having weighed all the evidence regarding potentially relevant witnesses for the '625 Patent, the Court finds that relevant witnesses reside in the WDTX, California (and likely the NDCA), and Massachusetts. Given the specificity of the WDTX witness, the questioned credibility of Mr. Phillips's declaration, and the remaining balance of Massachusetts and California witnesses, the Court finds that this factor, under the '625 Patent, disfavors transfer.

d.  '134 Patent: The BCM68650 chip

Mr. Phillips declares that only twelve R&D employees are in Texas, compared to 170 in San Jose. ECF No. 43-8 ¶ 5. Mr. Phillips also states that an unnamed witness with relevant knowledge is located in Massachusetts. Last, Mr. Phillips names Rich Nelson, the new manager for the relevant business unit. For the same reasons as stated above, the Court does not find Mr. Nelson to be relevant for any reason other than his managerial position and location, which are insufficient to warrant weight in the Court's analysis. Even Mr. Phillips's declaration and Broadcom's interrogatories give no reason to weigh him in the analysis.

Broadcom's interrogatories provide a bit more detail. Broadcom names twelve Austin-based employees involved in the business unit that researched, developed, and designed the BCM68650 chip. ECF No. 59-5 at 13. Of those, Broadcom states that seven had no involvement. *Id.* The remaining five worked on "block level chip integration," "P&R activity for the epon_top_wrapper module," "physical implementation of one of the layout blocks," "supplying power management controller IP and OTP Map," and one was "a design engineer responsible for the Ethernet Passive Optical Network (EPON) MAC designs for 1G/10G/25G speeds, as well as the hardware encryption of Ethernet packets." *Id.* at 13–14. Broadcom also states that it was "primarily researched, designed, and developed by [the business unit] in Irvine, California" and "employees of one or more foreign corporate affiliates of Broadcom Corp. in Israel." *Id.* at 14. The response then states that witnesses with relevant knowledge are located in Irvine, California, including Vahid Marandi.

Broadcom's interrogatory response with respect to the BCM68650 chip directly contrasts Mr. Phillips's declaration. The declaration states that the relevant witness is located in Massachusetts, while the interrogatory response states the relevant witnesses are in Irvine,

California. The Court is responsible for assessing the relevance of the proposed witnesses. Broadcom gives no reason to believe its conflicting responses. Relevant witnesses are likely located in Irvine, California, Israel, Austin, Texas, and perhaps Massachusetts (though that appears least likely). Accordingly, the Court finds that neither forum is more convenient than the other with regard to the BCM68650 chip.

### e. '134 Patent: The BCM88280, BCM 88480, BCM 88670, and BCM88800 chips.

For the above-mentioned chips, Mr. Phillips states that the two Texas employees were not involved in the research or design of any of the chips. ECF No. 43-8 ¶ 5. Instead, Mr. Phillips proposes that "witnesses with relevant knowledge regarding the design of these chips . . . are located in San Jose, California, including, for example, Naveen Malur." *Id.* Again, Mr. Phillips names Ram Velaga, but this Court gives no credence to that statement as it is not tied to any relevant reason for his testimony.

Broadcom's interrogatory responses indicate that the BCM88280, BCM88480, BCM88670, and BCM88800 chips were primarily researched, designed, and developed in San Jose and by a corporate affiliate in Israel. Naveen Malur and Mehmet Basoglu are proposed witnesses located in San Jose, California. Given the above information, the Court finds that relevant witnesses for the above-mentioned products are likely located in either Israel or the NDCA.

### f. '134 Patent: The XLP900 processor (APD)

For the last product, Broadcom argues that no R&D employees are located in Texas. *Id.*; *see also* ECF No. 59-5 at 19. Conversely, five employees of the division are in San Jose, California. *Id.* However, Broadcom argues that the witness with relevant knowledge regarding the design of the chip is located in Massachusetts. *Id.* As previously noted, the Court, accounting

for Fifth Circuit precedent and Federal Circuit guidance, gives this witness's increased inconvenience of travelling to the NDCA less weight.

### g.   Monterey's Proposed Witnesses

Monterey also proposes two witnesses with relevant knowledge regarding Monterey's licensing activities: Joseph Villella and Richard Misiag. ECF No. 59 at 10. "Mr. Villella is the Senior Vice President of Licensing for Monterey's parent, IPValue Management, Inc.; the Chief Licensing Officer for Monterey affiliate, Longitude Licensing Ltd.; and involved in negotiating and approving Monterey's licenses." *Id.* He resides and works in Austin, Texas. *Id.* "Mr. Misiag is the Vice President of Licensing for IPValue Management and is involved in asserting Monterey patents—including against Broadcom—and negotiating licenses." *Id.* He resides in Oklahoma.

Broadcom responds that Mr. Villella is an employee of a different entity and that Monterey lacks supporting evidence to corroborate its claim. ECF No. 66 at 3; *but see* ECF Nos. 59-29 (Mr. Villella's bio); 59-30 (Mr. Villella's LinkedIn profile); 59-31 (Mr. Misiag's bio); 59-32 (Mr. Misiag's LinkedIn); 59-33 (mapping the distance between Tulsa, OK and Austin, TX—452 miles); 59-34 (mapping the distance between Tulsa, OK and San Jose, California—1,692 miles). Instead, Broadcom argues that Keith Wilson leads Monterey's licensing efforts with Broadcom. Mr. Wilson lives in the NDCA. *Id.*; *see also* ECF No. 66-5.

Because Monterey proposes these witnesses under the willing witness factor, the Court presumes the witnesses are willing. An analysis of each of the witnesses indicates that they are all likely relevant. For example, Mr. Wilson appears relevant having submitted notice letters to Broadcom in 2018 (ECF No. 66-6), 2019 (ECF No. 66-7), and 2021 (ECF No. 65-8). However, the contents of those letters indicate that Mr. Villella likely is relevant, and Mr. Misiag is certainly relevant. Each of the notice letters state, "Monterey has appointed IPValue

Management, Inc." as its agent to commercialize Monterey's patents and other intellectual property rights worldwide." ECF Nos. 66-6; 66-7; and 65-8. As the Senior Vice President of Licensing for IPValue Management, Inc., Mr. Villella is likely involved in the negotiation and approval of Monterey's licenses, as alleged by Monterey. *See* ECF No. 59 at 10. Thus, Mr. Villella likely has a significant role even without directly interfacing with Broadcom. Mr. Misiag appears to be even more relevant given the language in the recent notice letters since Mr. Misiag joined IPValue Management. In 2018, Mr. Wilson asked Broadcom to respond to him to discuss licensing. ECF No. 66-6. In the 2019 and 2021 letters, Mr. Wilson asks Broadcom to "reach out to Mr. Richard Misiag of IPValue to propose dates to meet," followed by Mr. Misiag's contact information. ECF Nos. 66-7 and 66-8. It appears Mr. Wilson plays a limited role of notifying and introducing, but the true heavy lifting in the licensing negotiations and approval indeed occurs with Mr. Misiag, and likely by Mr. Villella of IPValue Management. Accordingly, the Court weighs Mr. Villella and Mr. Wilson as equally relevant to the case as witnesses. One is in the NDCA, while the other is here in the WDTX. Thus, they cancel each other out. Mr. Misiag remains and is located in Oklahoma. As cited by Monterey, San Jose is nearly three times as far as Austin from Tulsa, Oklahoma where Mr. Misiag lives. And, as previously discussed, the Court believes that such a drastic difference in travel should lead to an equally drastic calculation of inconvenience under the "100-mile" rule. However, in an effort to balance Fifth Circuit precedent and Federal Circuit guidance, the Court holds that such a witness would weigh slightly against transfer.

In short, the Court finds that witnesses for the BCM56880 and BCM56980 chips of the '625 Patent disfavor transfer. Witnesses for the BCM58713 and BCM5976 chips of the '625 Patent similarly disfavor transfer, even if just slightly. On the other hand, neither forum is more

convenient for witnesses in relation to the BCM68650 chip of the '625 Patent. For the BCM88280, BCM 88480, BCM 88670, and BCM88800 chips of the '134 Patent, transfer is likely more convenient. Though it should be noted, the same two witnesses were proposed for each of the four accused chips. For the XLP900 processor (APD) of the '134 Patent, transfer is just slightly more inconvenient. Last, Monterey's proposed witnesses relevant to licensing weigh slightly against transfer. Although the location of each product's relevant witnesses may produce a close call, witnesses for the majority of the products would find trial in the WDTX to be more convenient. Accordingly, this factor weighs against transfer.

### iv.   All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive

When considering the private interest factors, courts must consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation . . . involving the same patent-in-suit, . . . pertaining to the same underlying technology and accusing similar services, . . . the Federal Circuit cannot say the trial court clearly abuses its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d at 1346 n.3.

Broadcom argues that Monterey's prosecution strategy favors transfer. Initially, Monterey filed suit against Broadcom Inc., but voluntarily dismissed its claims against Broadcom Inc. due to improper venue issues. ECF No. 43 at 11. Even though the improper venue issue as to Broadcom Inc. is moot, Broadcom argues that another issue remains—Broadcom does not sell or offer for sale the accused products in the United States. *Id.* at 12. Instead, Avago is

responsible for such sales. Avago is incorporated in Delaware with a principal place of business in San Jose, California. *Id.* Notably, Avago does not have a regular and established place of business in the WDTX and venue would be improper here. *Id.* Therefore, Broadcom argues, "a significant possibility exists that Monterey will necessarily have to initiate a separate action against [Avago] in a different venue (*e.g.*, the NDCA)." *Id.* Broadcom proposes that this case be transferred to NDCA wherein Avago could properly be added as a party to avoid discovery and court inefficiencies should Monterey sue Avago elsewhere. *Id.*

Monterey largely ignores Broadcom's arguments within this factor, instead pointing to parallel litigation pending in this district. ECF No. 59 at 13. Specifically, Monterey points to *Broadcom 541*, *Broadcom 542*, *AMD 839*, and *Qualcomm*. *Id.*

Monterey's proposition is correct: co-pending or parallel litigation concerning *the same patent at issue* can result in this factor weighing strongly against transfer. *See EcoFactor, Inc. v. Vivint, Inc.*, No. 6:20-cv-00080-ADA, 2021 WL 1535414, at *6 (W.D. Tex. Apr. 16, 2021). However, the patents at issue in this case— the '625 Patent and '134 Patent—share no commonality with any of the other suits pending in this District. Monterey errantly relies on these "co-pending" cases to tip the balance in its favor, but without actual overlap, such a general proposition is null. *See In re: NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *5 (Fed. Cir. Oct. 13, 2021) (citing *In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017)). Moreover, *Broadcom 542* is subject to a motion to transfer venue. *See In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017) (it cannot be correct that "the mere co-pendency of related suits in a particular district would automatically tip the balance in [the] non-movant's favor regardless of the existence of co-pending transfer motions and their underlying merits").

To be sure, an identical plaintiff, defendant, and scheduling order in separate cases can benefit from judicial efficiencies of consolidation or maintenance in a common forum even when significant factual differences exist. However, such efficiencies have already been achieved via venue discovery. From this point on, it is unlikely that much discovery will overlap due to the differing patents and accused products.

Broadcom argues that Avago, or Broadcom Inc., would likely be added as parties if this case were transferred to the NDCA. While that may be the case, it is too speculative to impact analysis of this factor. Surely, if the case were transferred, each party would re-assess its strategies. But the Court is not convinced that Avago would necessarily be added as a party. Hence, the Court finds that this factor is neutral.

### B.  The Public Interest Factors

#### i.   *Administrative Difficulties Flowing from Court Congestion*

This factor considers "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d at 1347. But, in light of recent jurisprudence, speed to trial is subject to several speculative calculations. Indeed, this factor is predictive and speculative. To make such a prediction, courts must now engage in an obscure algorithmic process accounting for cases per judgeship and a comparison of pending cases between the forums, without accounting for a court's scheduling order. *See In re Juniper Networks, Inc.*, No. 2021-156, 2021 U.S. App. LEXIS 29812, at *8 (Fed. Cir. Oct. 4, 2021) (the "proper" analysis "looks to the number of cases per judgeship and the actual average time to trial"). Oddly, even if more cases exist in a transferee forum, it does not necessarily mean that the transferor forum will bring the case to trial faster— despite the transferor forum's faster trial setting. *See In re Apple Inc.*, 979 F.3d at 1344 (indicating that a transferee forum having more pending cases than the

transferor forum "is, without more, too tenuously related to any differences in speed by which [the] districts can bring cases to trial."). Moreover, despite this Court's ability to hold trials largely in line with the default scheduling order, such a factor should be given little to no predictive weight. *See In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2469 (2021) ("Nothing about the court's general ability to set a schedule directly speaks to that issue.").

Broadcom "respectfully submits that the NDCA is no more congested than this Court." ECF No. 43 at 13 (citing *In re Juniper Networks*, 2021 WL 4343309, at *6 ("We have noted that the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics.")). Conversely, Broadcom argues that even if this Court would get to trial faster, this factor should be given little weight as "Monterey does not sell any products." *Id.*

Monterey argues that Broadcom "offers no evidence showing that the case will be tried faster in the NDCA than in this District." ECF No. 59 at 13. In contrast, Monterey shows that the from 2016-2020, the median time to trial for this court is 1.93 years, while that of the NDCA is 4.88 years. *Id.*; ECF No. 60-39.

This Court is unaware of the parameters used in *Juniper* to find "no significant differences in caseload or time-to-trial statistics." *In re Juniper Networks*, 14 F.4th 1313, 1322 (Fed. Cir. 2021). However, based on the evidence provided in the instant case by Monterey, and this Court's recent trials, the Court finds that an appreciable difference in docket congestion, cases per judgeship, and estimated time-to-trial exists. Moreover, Monterey's provided time-to-trial evidence is well-supported by this Court's proven track record to expeditiously resolve patent cases before it. *See, e.g., MV3 Partners v. Roku,* 6-18-CV-00308 (W.D. Tex., filed Oct.

16, 2018) (23.7 months from case filing to trial); *VLSI Technology LLC v. Intel Corporation*, No. 6-21-CV-00057 (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *CloudofChange v. NCR Corp., LLC*, No. 6-19-CV000513, 2020 WL 6439178 (W.D. Tex., filed Aug. 30, 2019) (20.3 months from case filing to trial); *Freshub, Inc. et al v. Amazon.Com Inc. et al*, No. 6-21-CV-00511 (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc*. No. 6-19-CV-00044 (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial); *Profectus v. Google LLC*, No. 6-20-CV-00101 (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial); *Jiaxing Super Lighting v. CH Lighting Tech.*, No. 6-20-cv-00018 (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *VideoShare v. Google LLC*, No. 6-19-CV-663 (W.D. Tex., filed Nov. 15, 2019) (23.8 months from case filing to trial); *NCS Multistage v. Nine Energy*, No. 6-20-cv-277 (W.D. Tex., filed Mar. 24, 2020) (21.8 months from case filing to trial); *EcoFactor, Inc. v. Google LLC*, No. 6-20-cv-00075 (W.D. Tex., filed Jan. 31, 2020) (24 months from case filing to trial).

Despite Broadcom's indication otherwise, rapid disposition of this case is important given the Federal Circuit's longstanding sentiment that "[r]ecognition must be given to the strong public policy favoring expeditious resolution of litigation." *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989). The Federal Circuit has even acknowledged Congress's interest in the "quick" resolution of patent disputes. *See, e.g.*, *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016).  Broadcom's reply brief nearly concedes this factor. In response to Monterey, Broadcom simply argues that it "need not demonstrate that the case will be tried faster in the NDCA than in this District to justify transfer. Rather, when numerous other factors weigh in favor of transfer the speed of the transferee district court is of little to no weight." ECF No. 66 at 5 (internal citations and quotation marks

omitted). Monterey's evidence illustrates the clear disparity in the time-to-trial statistics to show that this factor disfavors transfer.

    *ii.*    ***Local Interest in Having Localized Interests Decided at Home***

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent case "are not a fiction." *In re Samsung Elecs. Co.*, Nos. 2021-139, 2021-140, 2021 U.S. App. LEXIS 19522, at *20 (Fed. Cir. June 30, 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-cv-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d 1344 (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)) (emphasis in original). But courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *See In re Juniper Networks, Inc.*, 14 F.4th at 1320.

Broadcom is at home in the NDCA, where over a thousand employees reside. ECF No. 43 at 14. Broadcom similarly argues that the majority of the products accused by Monterey were

researched and designed primarily in California. *Id.* By contrast, Broadcom argues that "the WDTX has virtually no local interest to this case because Broadcom's relatively few Texas-based employees are largely irrelevant to this matter." *Id.*

In response, Monterey argues that "Broadcom fails to identify any concrete connection between the NDCA and the events that gave rise to this suit." ECF No. 59 at 14. Monterey highlights that Broadcom has an office in this District that houses over 75 employees, "including employees that have worked on the accused products and are part of the business units that designed those products." *Id.*; ECF No. 59-4. Monterey further quotes a Broadcom brief from a prior case wherein Broadcom states that Austin—in the WDTX—has a local interest because "Broadcom maintain[s] offices and employees in Austin." *See Innovative Foundry Techs. LLC v. Semiconductor Mfg. Int'l Corp., et al.*, No. 6:19-cv-00719-ADA, ECF No. 62 at 10 (W.D. Tex. Apr. 22, 2020).

Broadcom's reply argues that its statements in *Innovative Foundry* involved different patents and different accused products wherein the Austin Division had a relatively more local interest than Waco. ECF No. 66 at 5. Accordingly, those statements should carry no weight in this case. Furthermore, Broadcom points to its motion wherein it stated "that 'most' of the accused products 'were researched, designed, and developed' in the NDCA."

Both forums have a local interest. Broadcom's declarant, Mr. Phillips, states that based on his "internal investigation of this case to date, most of [*sic*] products Plaintiff accuses of infringement in this case were designed primarily in California, and most of the technological research related to the products was done in California." ECF No. 43-8 ¶ 3. Mr. Phillips further declares that "[m]y understanding is consistent with, and confirmed by the fact that, more than 80% of Broadcom Corp.'s R&D employees are based in California." *Id.* The NDCA appears to

have a local interest. The WDTX similarly has a local interest. Broadcom's office in Austin employs 75 individuals assigned to work on the accused products via their business unit designations. ECF No. 59 at 14; ECF No. 59-4. Mr. Phillips similarly admits that certain R&D employees related to the accused products work in this District, though such language is modified with phrases such as "few, if any" or "albeit minimally." ECF No. 43-8 ¶¶ 3, 4.

Given the statements made in declarations and depositions, there is no doubt that employees involved in the research and design of the accused products come from both the WDTX and NDCA offices. Therefore, this factor requires a weighing of the evidence to determine which forum has a greater local interest. It is in such an analysis that the credibility of Mr. Phillips's declaration comes under heavy scrutiny. In particular, Mr. Phillips characterizes the known WDTX employees as "few" or small in comparison to the quantity of employees in the NDCA. To emphasize this point, Broadcom's briefing highlights a quantifiable discrepancy in the number of Broadcom employees located in the NDCA, more than 1,400, compared to 90 in the WDTX. But again, "[t]his factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue and *the events that gave rise to a suit*." *In re Apple Inc.*, 979 F.3d 1332, 1345 (Fed. Cir. 2020) (internal quotation marks omitted).

Mr. Phillips's declaration is carefully worded, and his deposition underscores why. For example, Mr. Phillips states that "most of [*sic*] products Plaintiff accuses of infringement in this case were designed primarily in California, and most of the technological research related to the products was done in California." ECF No. 43-8 ¶ 3. But these generalizations do not clarify whether the California reference is restricted to the NDCA, or California at large. The declaration later acknowledges the difference in California versus NDCA employees for each

product, validating concerns as to the credibility of such generalized statements that did not narrow the quantified employees by the relevant district. The Court does not give this statement much weight other than to emphasize that Broadcom's offices in California employ more individuals than can be found in the WDTX. But again, those facts are not conducive to the local interest factor without more.

Mr. Phillips's declaration breaks down the research and design by accused product for each of the patents. Having addressed all of the proposed witnesses, the Court need not rehash its prior conclusions. But at a high level, the Court provides the following reminders relevant to the local interest factor. For the '625 Patent, Mr. Phillips declares that no Texas employees were involved in the research or design of the BCM56880 chip, while only one was involved, "albeit minimally," in the research or design of the BCM 56980. ECF No. 43-8 ¶ 4. Alternatively, Broadcom proposed a couple witnesses located in the NDCA that allegedly have relevant knowledge regarding the design of these chips or are the head of the CSG division. *Id.* The BCM58713 chip only has "a single R&D employee in Texas" that "was not involved in [its] research or design." *Id.* Instead, the witness with relevant knowledge is located in Massachusetts and the head of the division, Frank Ostojic, splits time between San Jose and Fort Collins, Colorado. The BCM5976 chip has no R&D employees in Texas but "more than 220 R&D employees in California, including more than 90 in San Jose." A relevant witness with knowledge regarding the design of this chip is in Irvine, California, along with the head of its division.

For the '134 Patent, Broadcom admits there are "twelve R&D employees in Texas." *Id.* ¶ 5. However, it contrasts that with 170 R&D employees in San Jose (out of 310 R&D employees in California). *Id.* However, the witness with relevant knowledge is located in Massachusetts,

while the business unit manager is located in Irvine, California. Similarly, the division that designed the BCM88280 chip, the BCM 88480 chip, the BCM88670, and the BCM 88800 chip has "two R&D employees in Texas—neither of whom were involved in the research or design of any of those chips. In contrast, that same division has more than 340 R&D employees in San Jose, California." *Id.* Last, the XLP900 processor has no R&D employees involved in its design located in Texas. *Id.* But that same division has five R&D employees in San Jose. *Id.* An employee with relevant knowledge on the XLP900 processor is located in Massachusetts, while the head of the division splits time between San Jose and Fort Collins. *Id.*

Despite these more particular declarations for each accused product, the Court remains skeptical given the contradictions between Mr. Phillips's declaration, his deposition, and Broadcom's interrogatory responses. Mr. Phillips acknowledged he did not personally investigate where the accused products were primarily designed. ECF No. 59-3, 278:9-11. Furthermore, very little detail is given regarding the investigative practices of his paralegal. *Id.* 57:3-60:20; 159:8-161:22. As previously discussed, much of the Court's concern centers on the investigative process and its errant starting assumption.

The crux of this factor is to identify where the events forming the basis for infringement occurred. *See In re Juniper Networks, Inc.*, 14 F.4th at 1320. From the Court's review of the interrogatory responses, deposition transcript, briefing, declarations, and other cited evidence, it would appear the local interest in the NDCA is slightly greater than that in the WDTX. No doubt, as admitted by both parties, employees within each of the respective districts worked on the research and design of the accused products. But quite simply, the Court does not find Broadcom's evidence to be very reliable or credible. Still, the magnitude of such work appears to weigh in favor of the NDCA. *See* ECF No. 66-1. This factor slightly favors transfer.

### iii.     Familiarity of the Forum with the Law That will Govern the Case

Both parties agree that this factor is neutral. The Court also agrees.

### iv.     Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

Both parties agree that this factor is neutral. The Court also agrees.

## C.  Weighing of the Factors

Having considered the private and public interest factors, Court's conclusions for each factor is summarized in the following table:

| Factor | The Court's Finding |
|--------|---------------------|
| Relative ease of access to sources of proof | Slightly favors transfer |
| Availability of compulsory process to secure the attendance of witnesses | Weighs in favor of transfer |
| Cost of attendance for willing witnesses | Weighs against transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Weighs against transfer |
| Local interest | Slightly favors transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

Three factors are neutral, two favor transfer, one slightly favors transfer, and two weigh against transfer. Even after weighing the factors individually and independently, the Court is not to simply tally a score to determine whether transfer is proper. *In re Radmax*, 720 F.3d at 290 n.8

("We do not suggest—nor has this court held-that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting "score," is the proper methodology."). Indeed, the Court does not elevate this standard to "clear and convincing." But when the evidence and factual determinations end in a "close call," that surely is not enough to dictate transfer under the "clearly more convenient" standard. *See Quest NetTech Corp. v. Apple, Inc.*, 2019 WL 6344267, at *7 ("a movant must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning") (citing *In re Volkswagen II*, 545 F.3d at 315). Broadcom fails to provide credible evidence that reaches the "clearly more convenient" standard. The Court concludes Broadcom has not met its requisite burden to dictate transfer to the NDCA.

## IV.  CONCLUSION

Defendant Broadcom Corp.'s Motion to Transfer Venue under 28 U.S.C. § 1404(a) to the Northern District of California (ECF No. 43) is hereby **DENIED.**

SIGNED this 21st day of February, 2022.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE